# Exhibit A

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA
EASTERN DIVISION

| | |
|---|---|
| **Jeremy McWilliams**, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**Platinum Advertising II, LLC**;<br>**Vexso Black Asset Management, Inc.**;<br>**William Siveter**; and<br>**John Nelson**,<br><br>Defendants. | No. 2:21-cv-00607-CB |

### SETTLEMENT AND RELEASE AGREEMENT

This Settlement and Release Agreement (the "Agreement") is entered into by and between, on the one hand, Plaintiff Jeremy McWilliams ("Plaintiff"), individually and on behalf of all similarly-situated individuals identified in Section 1(B) below, and, on the other hand, Defendants Platinum Advertising II, LLC ("Defendant Platinum Advertising"), Vexso Black Asset Management, Inc. ("Defendant Vexso Black"); William Siveter ("Defendant Siveter"), and John Nelson ("Defendant Nelson") (collectively "Defendants"). Defendants and Plaintiff will be collectively referred to as the "Parties."

The Parties agree as follows:

1. **Purpose and Background**

    A. On May 7, 2021, Plaintiff initiated the lawsuit *Jeremy McWilliams v. Platinum Advertising, LLC, et al.* (the "Lawsuit"), currently pending in the United States District Court, Western District of Pennsylvania (Eastern Division) (the "Court"), Case Number 2:21-cv-00607-CB.

    B. The Lawsuit asserted collective claims against Defendant under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, for the alleged failure to pay minimum wage and overtime to McWilliams and similarly situated individuals (the "FLSA Claim").

    C. The Parties seek to resolve the FLSA claims raised in the Lawsuit. At this time, no collective of employees or class has been certified by the Court. However, for purposes of this Agreement, the Parties have agreed to the following collective of employees for settlement purposes:

1

> All current and former sales agents (or individuals with similar job duties or title) who worked for Defendants and were designated as independent contractors at any time starting three years prior to the filing of the Lawsuit up to the present. These individuals are referred to as the "Collective Members."

The "Settlement Period" is from May 7, 2015 until February 10, 2022.

D. The purpose of this Agreement is to conclusively and finally settle and resolve all of Plaintiffs' and Collective Members' unpaid minimum and overtime wage claims against Defendant that were raised as part of the Lawsuit or arise out of facts asserted in the Lawsuit, whether arising under the FLSA.

E. The Parties agree and understand that this Agreement is part of a global settlement, and that this Agreement is neither valid nor enforceable unless the Court enters a written Order approving this Agreement. If the Court does not finally approve this Agreement, then this Agreement is null and void.

2. **Opportunity to Negotiate, Consider, and Consult with Counsel**

   A. The terms of this Agreement are the product of lengthy, arms-length negotiations between the Parties and their respective counsel.

   B. The Parties agree that the consideration given to support the obligations under this Agreement is adequate and sufficient in all respects and that the Parties have not received or been made any promise, inducement, or concession not set forth in this Agreement in support of the obligations imposed.

   C. The Parties acknowledge that they have been represented by counsel throughout the negotiation of this Agreement and the Lawsuit.

3. **Settlement Terms and Disbursement**

   A. To settle the Lawsuit, and in consideration of the release of claims and dismissal of the Lawsuit, Defendants agree to pay up to $500,000 (the "Gross Settlement Amount") for which Defendants Platinum Advertising and Siveter are responsible for $250,000 and Defendants Vexso Black and Nelson are responsible for $250,000. To facilitate settlement, Platinum Advertising has lent $150,000 to Defendants Vexso Black and Nelson by contributing $400,000 toward the Gross Settlement Amount. The terms of the $150,000 loan from Platinum Advertising to Defendants Vexso Black and Nelson are between them and not set forth in this Agreement. The Gross Settlement Amount shall fully resolve and satisfy any amounts to be paid to the Plaintiff and Collective Members, any Court-approved Service Award as more fully set forth herein, and any Court-approved attorneys' fees and costs.

B. The Gross Settlement Amount is the maximum amount of money that Defendants could be required to pay to Plaintiff and the Collective Members, even if 100% of the Collective Members cash their settlement checks, described below. Defendants will not be required to pay more than the Gross Settlement Amount under the terms of this Agreement.

C. Within the time period specified below in Section 6, the Claims Administrator (as hereinafter defined) will issue checks to Plaintiff and each Collective Member based on Plaintiff's and each Collective Member's "Pro Rata Share," calculated as follows:

  i. The Gross Settlement Amount shall first be reduced by any amounts awarded for attorneys' fees, costs and expenses, service awards, and any other amounts not allocated to Collective Members. The remainder will be the Collective Fund, which shall be distributed to each Collective Member (including Plaintiff) pro-rata in accordance to their proportional share of the total number of days worked for Defendants.

D. On behalf of the Defendants, the Claims Administrator will issue to Plaintiff and each Collective Member a single check for their proportional share of the Collective Fund, which shall be as follows:

  i. Each check will be treated as liquidated damages and will not be considered wages or subject to withholding. Defendants shall issue an IRS Form 1099 to each of the Collective Members for each of their respective payment amounts.

  ii. The Parties are responsible for ensuring their own proper tax treatment of the payments.

E. On behalf of the Defendants, the Claims Administrator will, from the amount remaining after subtraction of the amount of the Collective Fund from the Gross Settlement Payment (the "Settlement Balance"), pay to Plaintiff $7,500 as a service award, subject to Court approval. This amount will come from the Settlement Balance and will count toward the maximum amount of the Gross Settlement Amount. The service award will be payable by a separate check and will be considered as Form 1099 income.

F. In the event that Plaintiff, Collective Counsel, and/or Collective Members believes he/they must petition the Court to enforce this Agreement and/or if Defendants fail to make one or more payments as outlined above, Plaintiffs and Collective Members may notify Defendants of the issue. Defendant will then have 14 days to cure the failure or issue. If Defendant does not cure the failure or issue, Plaintiff, Collective Counsel, and/or Collective Members can request from the Court an entry of judgment against Defendant for the amount of the Settlement Balance and plus applicable interest. Further, Plaintiff, Collective Counsel, and/or the Collective Members will be entitled to recover reasonable attorneys' fees and costs associated with obtaining such a judgment and its enforcement, if any of Defendants fail to comply with the terms of this Section 3.

G. All payments set forth in this Section 3 are subject to Court approval of the terms of this Agreement and dismissal of the Lawsuit with prejudice upon submission of an appropriate motion by Collective Counsel. Defendants agree not to oppose that motion.

4. **Attorneys' Fees and Expenses**

   A. Defendants agree not to object to an attorneys' fee award equal to or less than one-third (33.33%) of the Gross Settlement Amount ($166,666.67), a costs reimbursement award (not to exceed $6,500), and a settlement administration reimbursement award (not to exceed $9,000), which shall encompass all litigation costs and expenses. This amount will be subtracted from the Settlement Balance and will count towards the maximum amount of the Gross Settlement Amount.

   B. Plaintiff, on behalf of the Collective Members, hereby irrevocably and unconditionally releases, acquits, and forever discharges any claim that he or they have or may have against Defendants for attorneys' fees, costs, or expenses associated with this Lawsuit, including but not limited to those attorneys' fees, costs, or expenses associated with Collective Counsel's representation of the Collective Members in this Lawsuit. Collective Counsel further understands and agrees that any fees and costs payment provided for herein will be the full, final, and complete payment of all attorneys' fees, costs, and expenses associated with Collective Counsel's representation of Plaintiff and Collective Members in this Lawsuit.

   C. This Agreement is not contingent on the Court approving the amount of attorneys' fees and costs noted above. In the event that the Court does not approve the above amount of attorneys' fees and costs or reduces that amount, the finding will not be a basis for rendering any unrelated section of the Agreement null, void, or unenforceable. Collective Counsel retains its right to appeal any decision by the Court regarding the attorneys' fees and costs, and such appeal will not be deemed an appeal of this Agreement or the settlement. The merits and substance of the Settlement will be approved by the Court separately and independently of the Court's decisions regarding Collective Counsel's application for attorneys' fees and costs. Notwithstanding anything to the contrary in this Agreement, should Collective Counsel appeal any decision by the Court regarding an award of attorneys' fees and costs, any timelines for payment of settlement checks to Collective Members shall be tolled during the pendency of such appeal.

5. **Release**

   A. "Released Parties" means Platinum Advertising II, LLC, Vexso Black Asset Management, Inc., William Siveter, and John Nelson, their predecessors, successors, assigns, agents, directors, officers, employees, representatives, attorneys, parent companies, divisions, insurers, subsidiaries, affiliates, insurance carriers and all persons acting by, through, under or in concert with them.

   B. Included with each settlement check issued to Collective Members will be a notice stating the following:

> By signing and cashing or otherwise negotiating the check accompanying this notice, I agree to join the lawsuit *McWilliams v. Platinum Advertising, LLC, et al.* pending in the United States District Court for the Western District of Pennsylvania (Case No. 2:21-cv-00607-CB (the "Action") and agree to be bound to the Settlement and Release Agreement in the Action. I hereby release all claims or causes of action I have against the Released Parties in the Action from May 7, 2018 until February 10, 2022, for unpaid minimum and overtime wages under the Fair Labor Standards Act, including any and all liquidated damages, penalties, attorneys' fees and costs, and interest recoverable under the FLSA.

C. The back of each settlement check issued to Collective Members will contain the following release applicable to Collective Members who cash or negotiate their settlement checks:

> By signing and cashing or otherwise negotiating this check, I agree and acknowledge that I have read, understand and agree to the terms and release contained in the written notice provided with this check.

D. Collective Members who do not timely sign and cash or otherwise negotiate their checks within 180 days of their issuance will not release any claims against Defendant.

E. In exchange for the service award payments described above, Plaintiff agrees to release and waive all claims he has against the Defendants, known or unknown.

## 6. Settlement Administration

The Parties agree to the following timeline for the completion of the settlement process and dismissal of the Action:

A. <u>Settlement Approval:</u> Plaintiff will draft and file an Unopposed Motion for Settlement Approval as soon as practicable.

B. <u>Effective Date:</u> The Agreement's Effective Date will be the date of the Court's approval of the Settlement.

C. <u>Settlement Payment Calculations:</u> Within 10 days after the Effective Date, the Defendant will transmit to Optime Administration, the "Claims Administrator," the amount of the payments due to Plaintiff and the Collective Members under the Settlement Agreement.

D. <u>Issuance of Checks and Notices:</u> Within 7 days of transmitting the amount of payments referenced in Section 6.C, the Claims Administrator will deliver the settlement checks, the release information, and the Notice (attached as Exhibit 1) to the Collective Members. Envelopes containing a settlement check will be marked on its face with the words "Platinum Advertising Settlement." The settlement checks will be negotiable for 180 days

from the date they were mailed. Each check will clearly state on its face that it must be cashed within 180 days of the postmark date on the envelope containing the check.

E. <u>Attorneys' Fees, Expenses, and Service Awards:</u> Within the later of (a) 10 days after the Effective Date, or (b) 5 days after Defendant's receipt of wire transfer information and required tax information from Collective Counsel, Defendant will wire payment of any awards from attorneys' fees, costs, and expenses to Collective Counsel, and mail any service awards to Plaintiff.

F. <u>Undeliverable Collective Member Checks:</u> If any checks are returned to the Claims Administrator as undeliverable with a forwarding address, the Claims Administrator will forward the payment to the forwarding address. If any checks are returned as undeliverable without a forwarding address, the Claims Administrator will attempt to contact the Collective Member and obtain an updated address. If a new settlement check is sent to an updated address, the Collective Member shall have 180 days from the mailing of the second check to cash or negotiate the check.

G. The fees and costs of the Claims Administrator shall be paid from the Gross Settlement Amount, up to the sum of $9,500.

H. The Claims Administrator will provide regular reports to the Parties regarding the status of the mailing of the Notices to the Collective Members, the Settlement administration process, the substance and status of disputes (if any) raised by Collective Members regarding the calculation of settlement amounts, and the distribution of Settlement Checks.

I. In the event of a dispute regarding an individual's settlement payment, the Claims Administrator shall promptly report the nature of the dispute to Plaintiffs' Counsel and Defendants' Counsel, who will confer in good faith with the Claims Administrator in an effort to resolve the dispute. In the event that counsel are unable to reach agreement, the Claims Administrator shall decide the dispute, and its decision shall be final and binding on the Parties.

J. The Parties and Counsel agree to cooperate with the Claims Administrator and to: i) provide accurate information, to the extent reasonably available, necessary to calculate the individual Settlement Class Members' settlement payments; and ii) assist the Claims Administrator in locating Class Members.

K. <u>Unclaimed Money:</u> Any money from a Collective Member's settlement check that is not claimed within the 180-day period for cashing checks—*i.e.*, the check is not timely cashed or negotiated by a Collective Member—will revert to Defendant Platinum Advertising. No tax reporting forms will be issued to or for any Collective Member who did not negotiate his or her settlement check.

**7. Dismissal of Lawsuit with Prejudice**

The Parties will request as part of the approval of the Settlement by the Court, that the Court dismiss the Lawsuit without prejudice. Following the conclusion of the settlement

procedure outlined herein, the Parties stipulate that they will move the Court to convert the dismissal of Lawsuit without prejudice to a dismissal with prejudice.

8. **No Admission of Liability**

    A. By entering into this Agreement, Defendants in no way admit to any violation of law or any liability whatsoever to Plaintiff or to the Collective Members, all such liability being expressly denied. Defendants deny and continue to deny the allegations in the Lawsuit and deny and continue to deny that they are liable or owe damages to anyone with respect to the alleged facts or causes of action asserted in the Lawsuit. Likewise, by entering into this Agreement, Defendants in no way admit to the suitability of this case for collective action treatment, other than for purposes of settlement.

    B. Settlement of the Lawsuit and all acts performed or documents executed in furtherance of this Agreement or the settlement embodied herein:  (a) are not, shall not be deemed to be, and may not be used as an admission or evidence of any wrongdoing or liability on the part of Defendants, or of the truth of any of the factual allegations contained in the Lawsuit; (b) are not, and shall not be deemed to be, and may not be used as an admission or evidence of fault or omission on the part of Defendants in any civil, criminal, administrative or arbitral proceeding; and (c) are not, and shall not be deemed to be, and may not be used as an admission or evidence of the appropriateness of these or similar claims for collective action treatment other than for purposes of administering this Agreement.

9. **Effect of Failure to Grant Approval:**  In the event the Court fails to enter an order approving the settlement in accordance with this Agreement, the Parties shall proceed as follows:

    i. The Lawsuit will resume unless the Parties jointly agree to: (a) seek reconsideration or appellate review of the decision denying approval of settlement, or (b) attempt to renegotiate the settlement and seek Court approval of the re-negotiated settlement.

    ii. In the event any reconsideration and/or appellate review is denied, the Parties shall have no further rights or obligations under this Agreement.  The Agreement shall be void and the Parties shall revert to their position *status quo ante*.

10. **Other Terms**

    A. Plaintiff, on behalf of themselves and the Collective Members, represents and warrants that he has not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Lawsuit.

    B. No modifications or amendments to any of this Agreement's terms, conditions, or provisions may be made except by written agreement executed by all Parties or their representative. Any material changes will be subject to approval by the Court presiding over the Lawsuit.

C. This Agreement including any exhibits constitutes the entire agreement between the Parties, and all prior negotiations and understandings between the Parties shall be deemed merged into this Agreement.

D. This Agreement is written jointly by the Parties and may not be construed against any one party as the drafter. If any provision(s) of this Agreement is held to be illegal, invalid, or unenforceable under present or future laws, any such provision(s) will be curtailed and limited only to the extent necessary to bring it within the requirements of the law. In that event, the remainder of this Agreement will thereafter be construed and enforced as if the illegal, invalid, or unenforceable provision(s) had never comprised a part of the Agreement. The remaining provision(s) of the Agreement will continue in full force and effect and will not be affected by any illegal, invalid, or unenforceable provision(s) or by its severance.

E. The waiver by any party hereto of a breach of any provision of this Agreement will not operate or be construed as a waiver of any subsequent breach of any party, nor will any waiver operate or be construed as a rescission of this Agreement. No breach of this Agreement will permit the non-breaching party to repudiate the Agreement or refuse or fail to perform any obligations required hereunder.

F. Except as otherwise provided herein, all Parties shall bear their own costs, expenses and attorneys' fees relating to this Agreement and the Lawsuit.

G. Pennsylvania law governs this Agreement's validity, construction, and enforceability. This Court shall retain exclusive jurisdiction to enforce the terms of this Agreement, and all Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the terms of the Agreement.

H. This Agreement may be executed by facsimile and in multiple counterparts, each of which will be deemed an original, but all of which together constitute one instrument.

I. The Parties agree to promptly take all actions reasonably necessary to effectuate this Agreement, including but not limited to motions to the Court for approval of the Agreement and continuance of any intervening deadlines contrary to those contemplated by the Agreement.

J. If any deadline under the Agreement falls on a Saturday, Sunday, or legal holiday, the Parties agree that the deadline will be deemed to be the next business day.

The undersigned hereby acknowledge and agree to all of the terms, conditions, and provisions of the above settlement agreement.

*[Signature: Jeremy McWilliams]*
Jeremy McWilliams						Date: 5/3/2022

PLATINUM ADVERTISING II, LLC

By: *[Signature: William Siveter]*				Date: 4/28/2022
William Siveter, Manager

VEXSO BLACK ASSET MANAGEMENT, INC.

By: *[Signature: John Nelson]*				Date: 5/4/2022
John Nelson
Its: President

*[Signature: William Siveter]*
William Siveter						Date: 4/28/2022

*[Signature: John Nelson]*
John Nelson						Date: 5/4/2022

9